IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GRISSELLE GONZALEZ,<br><br>        Plaintiff,<br><br>  v.<br><br>ILMIA BONO CHOUDHARY, M.D., et al.,<br><br>        Defendants. | Civil No. 08-0076-JHR-AMD<br><br><br><u>OPINION</u> |

**APPEARANCES:**

Dominic Guerrini, Esq.
Geary Yeisley, Esq.
Kline & Specter
457 Haddonfield Road
Suite 540
Cherry Hill, NJ 08002

George H. Cortelyou, Esq.
Jessica Lee, Esq.
Buckley & Theroux, LLC
932 State Road
Princeton, NJ 08901

Michael G. Halpin, Esq.
Grossman & Heavey
1608 Highway 88 West
Suite 200
Brick, NJ 08721

**DONIO, MAGISTRATE JUDGE**:

    Presently before the Court is the motion [Doc. No. 21] of Plaintiff, Grisselle Gonzalez, seeking an Order compelling Defendant South Jersey Healthcare Regional Medical Center

(hereinafter, "SJHRMC") to produce medical records requested in Plaintiff's Supplemental Requests for Production of Documents. The discovery issue presented by way of this motion is the scope of relevant discovery in connection with Plaintiff's claim under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (hereinafter, "EMTALA"). Specifically, the Court considers whether other patient records are relevant to Plaintiff's claim that she did not receive an "appropriate medical screening examination" when she presented to the emergency department at SJHRMC on February 1, 2007. Plaintiff seeks redacted records of other patients who presented at the same hospital with a chief complaint of chest pain within a two-week period of Plaintiff's February 1, 2007 hospital visit. For the reasons that follow and for good cause shown, the Court concludes that records of other patients presenting to the emergency department during the two-week period prior to the incident are relevant to Plaintiff's EMTALA claim, and Plaintiff's motion to compel is granted as set forth herein.

The allegations of Plaintiff's complaint surround Plaintiff's treatment at the emergency department at SJHRMC on February 1, 2007 when Plaintiff sought treatment for a purported "emergency medical condition manifested by the complaint of chest pain," rating her chest pain as 8 out of 10 in severity and associated with shortness of breath. (Compl. ¶ 15.) Plaintiff contends that at the time she arrived at the hospital, she was experiencing neck pain, throat

pain, jaw pain, and pain radiating down her arm. (Id.) Plaintiff alleges that she was evaluated by Defendant Ilmia Bono Choudhary, who diagnosed Plaintiff with extra-pyramidal symptoms and dystonia, but who allegedly failed to perform "adequate cardiac testing" or provide supplemental oxygen, nitroglycerine, or aspirin. (Id. at ¶¶ 17-19.) Plaintiff avers that she was discharged from the emergency department the same day, but returned on February 3, 2007 again seeking treatment for a complaint of chest pain, neck pain, throat pain, jaw pain, and pain radiating down her arm. (Id. at ¶¶ 20, 21.) Plaintiff asserts that she developed severe difficulty breathing and suffered a cardiac arrest while in the "triage area" of the emergency department on February 3, 2007. (Id. at ¶ 21.) Plaintiff asserts that Defendant SJHRMC violated EMTALA by failing to afford Plaintiff an "appropriate medical screening examination" on February 1, 2007 because of her lack of insurance, indigency, appearance, race, gender and/or age. (Id. at ¶¶ 25, 27.)[1] Plaintiff further alleges that Defendants Choudhary and SJHRMC provided negligent and reckless care and treatment of Plaintiff on February 1, 2007, and that they deviated from appropriate standards

---

1. Plaintiff asserted this EMTALA claim against both Defendants Choudhary and SJHRMC in her original complaint. Defendant Choudhary filed a motion to dismiss the EMTALA claim on the ground that EMTALA does not create a private right of action against physicians. (Br. in Supp. of Mot. to Dismiss [Doc. No. 9] 7.) Plaintiff, with consent of defense counsel, subsequently filed an amended complaint asserting the EMTALA claim against Defendant SJHRMC only. (See Am. Compl. ¶¶ 26-31.) Consequently, Defendant Choudhary's motion was dismissed by Order dated May 2, 2008. (Order 1-2, May 2, 2008.)

3

of medical care in a manner that purportedly proximately caused injury to Plaintiff. (Id. at ¶ 31.)

In the motion presently before the Court,[2] Plaintiff seeks to compel Defendant SJHRMC to produce redacted medical records of all patients who presented to the emergency department of SJHRMC between January 24, 2007 and February 8, 2007 with a chief complaint of chest pain. (Mem. of Law in Supp. of Pl.'s Mot. to Compel (hereinafter, "Pl. Br.") 2, 4.) Plaintiff asserts that she requires the records to support her claim that Defendant SJHRMC violated EMTALA by failing to provide an "appropriate medical screening examination" when Plaintiff presented to the emergency department on February 1, 2007. (Id. at 9, 10, 12.) In this regard, Plaintiff contends that she must identify the screening procedure provided by Defendant SJHRMC to patients presenting to the emergency department with similar symptoms before she is able to determine whether she received the same screening. (Id. at 12.) Because Defendant SJHRMC purportedly had, at the time Plaintiff presented to the emergency department, no written policies or procedures for the treatment of a patient who presented to the emergency department with a chief complaint of chest pain, Plaintiff maintains that the only means of determining the

---

2. The Court reserved its decision on the motion to compel after having held oral argument on December 5, 2008, at which time Dominic Guerrini, Esquire and Geary Yeisley, Esquire appeared on behalf of Plaintiff, Jessica Lee, Esquire appeared on behalf of Defendant Choudhary, and Michael G. Halpin, Esquire appeared on behalf of Defendant SJHRMC.

4

hospital's screening policies or procedures is to review contemporaneous medical records of other patients who presented to the emergency department with similar symptoms as Plaintiff. (Id.)

In opposition to the motion, Defendant SJHRMC represents that ninety-six charts fall into the category of documents identified by Plaintiff, but asserts that the records are not discoverable because the information sought by Plaintiff was allegedly already provided. (Mem. of Law in Opp. to Pl.'s Mot. to Compel (hereinafter, "Def. Br.") 2-3.)[3] Specifically, Defendant SJHRMC contends that Plaintiff received the chart from her admission to SJHRMC on February 1, 2007, and took the depositions of the triage nurse and Defendant Choudhary, at which time Plaintiff had the opportunity to inquire of "the policies and procedures that Dr. Choudhary follows when she sees patients in the emergency room." (Id. at 3-4.) Defendant SJHRMC also contends that the hospital had a number of written policies and procedures, albeit none that specifically addressed the screening of a patient who presented to the emergency department with a complaint of chest pain.[4] (Id. at 5, 7.) Defendant SJHRMC further disputes the relevancy of the

---

3. Defendant SJHRMC does not argue that production of the medical records is unduly burdensome, nor does it assert patient confidentiality under the Health Insurance Portability and Accountability Act of 1996 as a basis for withholding documents, as Plaintiff has agreed that all patient identifying information may be redacted from the medical records.

4. Defendant SJHRMC specifically points to Paragraph III.E of Policy ER.26, which concerns "Documentation & Patient Classification." (Def. Br. 8; see also Ex. B.)

5

medical records on the grounds that patients do not present to the emergency department with identical symptoms; that Defendant Choudhary participated in preparing only five of the ninety-six charts identified; and that this case is one of "faulty medical screening" rather than a case of "inadequate medical screening." (Id. at 9-10.)[5]

Rule 26 of the Federal Rules of Civil Procedure sets forth the framework for the scope of discovery. As a general matter, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.] . . . " FED. R. CIV. P. 26(b)(1). The Court may also permit for "good cause" discovery of matters that are "relevant to the subject matter involved in the action." Id. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990) ("[I]t is important to distinguish the right to obtain information by discovery from the right to use it at trial.") (citation omitted). Thus, relevancy is more liberally and broadly construed at the discovery stage than at trial. See Nestle, 135 F.R.D. at 104.

In this case, Plaintiff asserts a claim under EMTALA for failure to provide an "appropriate medical screening examination."

---

5. The Court notes that Defendant Choudhary takes no position on the present motion.

6

EMTALA provides in pertinent part:

> In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists.

42 U.S.C. § 1395dd(a).  "[T]he 'key requirement' of a hospital's duty under § 1359dd(a) [sic] 'is that a hospital apply its standard of screening *uniformly* to all emergency room patients, regardless of whether they are insured or can pay.'"  Davis v. Twp. of Paulsboro, 424 F. Supp. 2d 773, 779 (D.N.J. 2006)(quoting Power v. Arlington Hosp. Ass'n, 42 F.3d 851, 856 (4th Cir. 1994) and noting that Third Circuit has not interpreted "appropriate medical screening examination" requirement) (emphasis in original).  A plaintiff must therefore present evidence that the hospital treated the plaintiff "differently than any other patient who came to the emergency department with similar injuries and symptoms."  See id. at 780.  In meeting this burden, a plaintiff may "look to sources other than the express standard policies of [the hospital] in attempting to show that the screening [the hospital] gave . . . was different than the screening it would have offered to other patients."  Griffith v. Mt. Carmel Med. Ctr., 831 F. Supp. 1532, 1543 (D. Kan. 1993); see also Power v. Arlington Hosp., 800 F. Supp. 1384, 1387 n.6 (E.D. Va. 1992) (claim "may be made out, for

7

example, through proof of differential treatment[,] . . . proof of a failure to adhere to the Hospital's standard protocols, or, absent such standard protocols, proof of a failure to meet the standard of care to which the Hospital adheres."), aff'd in part, rev'd in part, 42 F.3d 851 (4th Cir. 1994). Since a relevant inquiry to Plaintiff's EMTALA claim is whether Plaintiff was screened differently than other patients, the Court finds that a discovery request seeking medical records of patients presenting to the emergency department with similar injuries and symptoms is appropriate under FED. R. CIV. P. 26(b)(1). See, e.g., Southard v. United Reg'l Health Care Sys., Inc., 245 F.R.D. 257, 260 (N.D. Tex. 2007) ("Necessarily, a comparison must be made between or among the symptoms presented by [the patient], the tests run and the diagnoses made as compared to other patients. . . . I find that the [medical records of other patients] are relevant, indeed, crucial, for the Plaintiff to make the appropriate comparison mandated under EMTALA."); Martinez v. Porta, No. Civ. A. 4:03-915Y, 2006 WL 3289187, at *1-2 (N.D. Tex. Nov. 1, 2006) (medical records "from each person who was a patient in the emergency department . . . and presented with symptoms similar to [patient's]" reasonably "could lead to evidence bearing on appropriateness and is, thus, relevant" to EMTALA claim for failure to provide an "appropriate medical screening" examination). The Court thus finds that Plaintiff's discovery request seeking medical records of other patients presenting at the emergency department with similar injuries and

8

symptoms is relevant to her EMTALA claim for failure to provide an "appropriate medical screening examination."

The gravamen of Defendant SJHRMC's objection to Plaintiff's discovery request is that the medical records are not relevant because Plaintiff is asserting a claim for "faulty medical screening" rather than an "inadequate medical screening" claim. (See, e.g., Def. Br. 10, 17.) Count I of the Amended Complaint, however, specifically alleges that Defendant SJHRMC violated EMTALA by, inter alia, "perform[ing] an inadequate triage examination without an appropriate complete medical screening examination," "depart[ing] from their standard medical screening examination of patients with medical histories, complaints and symptoms similar to those of Ms. Gonzalez," "fail[ing] to adhere to their own standard policies, procedures and/or protocols for patients entering the Emergency Department in similar circumstances," and "fail[ing] to perform a medical screening examination within the capabilities of the defendant hospital's Emergency Department and ancillary services[.]" (Am. Compl. ¶ 27(b)-(d), (f), (g).) Moreover, the Court notes that the "same evidence that supports a medical malpractice claim under state law may, in some circumstances, also constitute evidence of differential treatment sufficient to support a claim for failure to give an 'appropriate medical screening' under EMTALA." Griffith, 831 F. Supp. at 1543. Therefore, to the extent SJHRMC screens patients presenting in the emergency department with a chief complaint of chest pain by conducting

9

certain cardiac tests, the failure to perform such tests on Plaintiff may support both a malpractice claim and a disparate screening claim under EMTALA. See id. ("the evidence [plaintiff] has presented concerning [hospital's] failure to administer an EKG may be used to support both her medical malpractice and EMTALA medical screening claims."); Power, 800 F. Supp. at 1387 n.6 (if hospital adheres to standard "requiring tests A, B, and C as part of an appropriate emergency room medical screening," the "failure to perform test C, for example, would violate both EMTALA and the standard of care applicable in a malpractice claim."). The Court rejects Defendant SJHRMC's objection to the discovery request on relevance grounds.

Defendant SJHRMC also claims that because it has provided to Plaintiff the hospital's written policies for screening patients who present to the emergency department, there is purportedly no basis to produce other patients' medical records. (Def. Br. 5-9.) The Court need not address herein whether the production of a specific medical screening policy limits a plaintiff's right to obtain other patients' records in an EMTALA case, because Defendant SJHRMC does not dispute that at the time Plaintiff presented to the emergency department, the hospital did not have such a specific a written policy for chest pain in place.[6] Rather, Defendant SJHRMC

---

6. Plaintiff's counsel stated at oral argument that if such a specific written policy had been in place at the time of the alleged incident, Plaintiff would not seek other patients' medical records in discovery. In addition, at oral argument Plaintiff's counsel submitted a copy of a policy adopted by

10

identified only general policies, including Paragraph III.E of Policy ER.26, which do not delineate the specific examination procedures for patients presenting in the emergency department with similar symptoms as Plaintiff. (See Def. Br. 7-9; see also Ex. B.) In the absence of any documents setting forth a particular screening procedure for patients complaining of chest pain, Plaintiff argues, and the Court agrees, that Plaintiff may seek discovery of the records of other patients to determine whether the screening she received at SJHRMC was different than the screening offered to other patients who presented to the emergency department with a chief complaint of chest pain. See Griffith, 831 F. Supp. at 1542-43 (hospital "cannot, however, simply hide behind this lack of standard emergency room procedures. [The plaintiff] should be allowed to look to sources other than the express standard policies of [the hospital] in attempting to show that the screening [the hospital] gave . . . was different than the screening it would have offered to other patients."). Consequently, the Court rejects Defendant SJHRMC's argument that the medical records are not discoverable in light of the hospital's general written policies

---

SJHRMC, Policy ER.90, which became effective in April 2007, and which specifically delineates the procedures to be followed when a patient presents with a chief complaint of "Chest Pain w/ concern for Coronary Artery Disease." Defendant SJHRMC objected at oral argument to the Court's consideration of such policy. The subsequent policy, however, is not relevant to the Court's consideration of Plaintiff's motion since the policy in effect at the time Plaintiff presented to the emergency department did not specifically address screening of patients with a chief complaint of chest pain.

11

for screening patients who present to the emergency department.

The Court also rejects Defendant's argument that the medical records of other patients are not relevant because no two patients present with identical symptoms. (See Def. Br. 2-3.) Courts have held that "to show a disparate screening, [a plaintiff] is not required to identify patients who are identically symptomed to her, rather, she need only identify patients with 'similar symptoms.'" Romar v. Fresno Cmty. Hosp. & Med. Ctr., No. Civ. F 03-6668, 2007 WL 911882, at *12 (E.D. Cal. Mar. 23, 2007); see also Southard, 245 F.R.D. at 260 (". . . [I]t is not *just* patients who presented all of the seven symptoms alleged to have been presented by [patient] to whom comparison should be made."); Davis, 424 F. Supp. 2d at 780 (under EMTALA, patient should not be treated "differently than any other patient who came to the emergency department with *similar* injuries and symptoms.") (emphasis added).[7] To the extent Defendant argues that any records produced should be limited to the charts of patients examined by Defendant Choudhary (see Def. Br. 9), the Court rejects such limitation. To determine whether the hospital screened Plaintiff in the same manner as all similarly situated patients, Plaintiff must have the opportunity to examine the records of all patients contemporaneously presenting to SJHRMC

---

7. To the extent Defendant SJHRMC argues that other patients' symptoms are not sufficiently similar to Plaintiff's to have evidentiary value, that issue may be addressed by way of an in limine motion at time of trial. However, such argument is not an adequate basis to preclude discovery of relevant medical records under FED. R. CIV. P. 26(b)(1).

12

with a chief complaint of chest pain.  With respect to Defendant's assertion that Plaintiff already obtained the information at issue by deposing the triage nurse and Defendant Choudhary (see id. at 4), given that Defendant does not assert that the discovery request is "unreasonably cumulative or duplicative" or unduly burdensome, the Court finds no basis to preclude Plaintiff from obtaining further discovery on the issue.[8]  See FED. R. CIV. P. 26(b)(2)(C).

Plaintiff seeks medical records from January 24, 2007 to February 8, 2007, that is, one week prior and one week subsequent to the date of the incident at issue in this litigation. (Pl. Br., Ex. B at 4.)  At oral argument, Plaintiff's counsel agreed to modify the request to seek documents for the two weeks prior to the incident, that is, from January 17, 2007 to February 1, 2007, the date of the incident at issue in this litigation.  The Court shall compel production of the documents based upon the discovery request as amended.

An appropriate Order will be entered.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

Dated: April 15, 2009

cc: Hon. Joseph H. Rodriguez

---

8. Additionally, while Defendant Choudhary may have testified to the procedure she follows in examining a patient, there is no indication that she testified to a specific procedure adopted by the hospital in screening patients presenting to the emergency department with a chief complaint of chest pain.